May it please the court, Matthew Green for petitioner Aniseto Ochoa Ibarra. In this asylum withholding and CAT case there are three questions before the court today. Those are number one, whether the agency properly analyzed the evidence of both past and the likelihood of future persecution and torture. Number two, whether the agency properly analyzed the evidence in concluding that Mr. Ochoa Ibarra can safely and reasonably relocate within Mexico. And third, whether the agency abuses discretion in denying Mr. Ochoa Ibarra's motion to continue and consider expert testimony. I'd like to begin with discussing the first two questions as they relate to the dispositive issues of asylum withholding and CAT. So we'll start with past persecution and torture. We respectfully submit that the agency committed its first error of law in this case when it persecution. And of course, that's based on the compelling facts in this case. My client's brother Jesus was a successful DEA informant who was responsible for the destruction of a lucrative cartel drug tunnel operation and the subsequent conviction and imprisonment of cartel members. Fast forward about 15 years, some of these people get out of prison, specifically one individual, Jose Rodriguez-Landy, who was a major player in that drug tunnel operation. They're both in Nogales, Sonora, and Mr. Rodriguez-Landy recognizes my client as the brother of the snitch. The harm my client suffered occurred on four different days over four months, a total of four months later in June of 2015, the other two incidents occurred. The first one was the most severe. So Mr. Green, can I interrupt you for a moment? So we're all familiar with the facts and we would be comparing the information that you're conveying as to what occurred to your client with case law to decide whether that amounts to past persecution. But I'd like to take you to the issue of whether he could reasonably relocate. And I understand your argument to be that, I'm sorry, I mean the fear of future persecution. And the IJ relied on the petitioner's family members were still residing in Mexico and not being harmed. And you argued that they're not similarly situated. So what gives me pause is Jesus' testimony before the IJ about the police detaining their brother Manuel and holding him for a substantial period of time and questioning him. And then a cartel member coming up and telling the police to let him go. It's not the brother they're after, but to let Jesus know they're looking for him. So it does seem that the cartel members know of his siblings who live in Mexico, certainly based on the testimony about that incident. So that would seem to suggest that they are similarly situated. If they're not, that undercuts your argument for a social group based on being a member of the Ochoa Ibarra family. I don't know how that becomes a social group. And then if there's not anything, if they're not similarly situated. So how do you respond to that? That's what's giving me pause on that particular issue. So I'd like to hear how you would resolve that. Absolutely. Thank you, Your Honor. So Your Honor, actually what the record evidence established was that Mr. Ochoa Ibarra, my client, has three siblings who live in Mexico. There's Manuel de Jesus, who was the only one who has had any kind of argument that he's been identified and approached. The other is Rafael, who is essentially homeless. The indication is that the cartel has never been aware of him and still not aware of him. The third sibling is Maria. Again, there's no indication whatsoever in the record that the cartel has ever had any knowledge of her existence. So the only one is Manuel de Jesus, who was stopped, detained for an hour or two, by Nogales Police Department a number of years ago. And exactly, Judge, as you explained it, that's what the record showed. But what the record also shows through the testimony of Jesus is that he lives between the states of Sonora and Sinaloa and has assumed basically a different identity and a different name and goes by a different name. And he has been essentially elusive ever since that incident. Manuel de Jesus, correct. So Your Honor, we would respectfully submit that my client's very differently situated than his three siblings. Two of them are not on radar in any way, shape or form of the cartel or the police at their behest, to the extent that his other brother Manuel de Jesus had this one incident. The record evidence, the testimony, which was taken as credible, states that he has essentially been evading the cartel through these actions. How is the social group valid? The social group, I'm not going to quote it exactly. You can correct me. I think it was something along the lines of members of the Barra family who who have test writings to cartel or who the cartel might seek to revenge, something along those lines. Because, I'm sorry, I didn't mean to interrupt. But go ahead. Jesus is absolutely, Jesus and my client, Aniceto, are absolutely not, you know, not just on the radar, but at the forefront of specifically this one individual's, Mr. Rodriguez-Landy's, interest. And the record also shows that it's not just Mr. Rodriguez-Landy who was interested. It also shows that his boss, Jorge Palos Paredes, who is even higher up in the Sinaloa cartel, had an interest in discovering and exacting revenge against, at the time, right before the bus, the uninformed or the unidentified snitch. And the record also shows that it wasn't just these two individuals who were arrested and convicted and imprisoned. There's others. Counselor, even if I thought that your client was a member of a social group, because he and his brother, that's a pretty small social group, are being looked for by the cartels, how do you get around on page four of the BIA's decision, the BIA's conclusion that respondent has not demonstrated that the Mexican pattern or practice of persecution against other if you can show Mexican government acquiescence? And there's evidence that your client believed or was told by the cartel that the cartel had the government in his pocket and therefore he shouldn't go and report anything. But I don't know of any evidence in the record that demonstrates that the Mexican government is unwilling and therefore has acquiesced in the actions that are being, the punitive persecution by the cartel. Well, your honor, I first state that it's our contention that the agency did not meaningfully address the acquiescence question or the evidence relevant to it. And there is no reason analysis. That's one of the problems that we raised in our briefs and we continue to raise at this point. We don't think there was a substantive analysis. There's no evidence. You offered no evidence whatsoever of acquiescence. Well, your honor, we believe that we did in that specifically after the last incident when my client was robbed at gunpoint, he did contact law enforcement and this was at the tail end of all of the abuse. This is the fourth and final incident. The record seems to indicate that he explained everything to law enforcement and they still wouldn't do a report. They said that he has to march over to the prosecutor's office to do it. So we believe that that is squarely on point for acquiescence. That's not exactly acquiescence if they refer him to an office they think is better suited to address the problem. Well, we would respectfully submit that that constitutes acquiescence. I think in most civilized countries that have professional law enforcement apparatus, that would be shocking that a police officer would say that we can't do anything for you right on the heels of an attempted armed robbery and explain everything that happened. So that's our respect to our position. Can you explain the delay in the filing of your proposed expert testimony? I can. So judge, we briefed it at length. There's a lot that I could talk to you about. But as far as the delay goes, I mean, the record does show that my client was acquiesced until the very end of the case. And he had to pay a $15,000 bond. He did not get his work permit. It's a fairly, unfortunately, common story with similar situated respondents, petitioners in this court. All right. So, Mr. Green, we didn't leave you any time for rebuttal. I'll give you a minute. Yes. May it please the court. Micah Engler on behalf of the attorney general. In this case, substantial evidence supports the agency's determination that petitioner did not have an objectively reasonable fear of future persecution. And particularly, one of the things that your honor highlighted was that petitioner has three siblings who have the past. Where's the evidence that the cartel knows the whereabouts, at least of Raphael and Maria, and maybe not even Manuel de Jesus. And if that's the case, how can we conclude that they're similarly situated? Well, your honor, petitioner has tried to have it both ways. He's attempted to say that Jose is part of this cartel that is involved with the police that is all-encompassing. They have access to everywhere in Mexico and they can find him everywhere. And yet, they have no idea that Jesus has three other siblings in Mexico who are living there unharmed. The two cannot co-exist. He's saying as part of relocation, oh I can't relocate because they're going to find me. But at the same time, they can't find out that I have three other siblings that are living in the same state in Mexico and have been unharmed. So that goes to show that these individuals are similarly situated to the petitioner and he does not have an objectively reasonable fear of future persecution if he returns to Mexico. The agency also determined that it would not be unsafe or unreasonable for him to relocate within Mexico. And again, pointing to the same evidence, these siblings who have lived there in just a different city within Mexico, and they've been completely unharmed their entire life. And in fact, petitioner has lived in that city before and when he lived there, he was also unharmed. He lived there for 15 years earlier in his life and then he lived there another year from 2011 to 2012 when he was unharmed. So this goes to support until he got until he was kidnapped and and threatened with death. Well your honor, that occurred when he was in Nogales. When he moved from where he had been living with his sibling in Obregon, a different city in Mexico. When he was outside of Nogales, he never experienced any harm in Mexico. Okay. Yes, your honor. No, you answered my question. Thank you. This supports the agency's determination regarding relocation. The well-founded fear determination is dispositive of this case as well as the relocation portion. So counsel, did the agency provide sufficient findings to support the conclusion that he could relocate, reasonably could relocate? And if so, what were those findings? What's in the record? So in this case, the immigration judge in particular pointed to the siblings that were living in Obregon, pointed to the fact that petitioner never experienced harm outside of Nogales. And there's nothing in the record demonstrating otherwise that he could not relocate. None of the factors that the board has said should be looked at before, none of them were presented by a petitioner in this case to be examined. So the elements that were present in the record, the immigration judge and the board looked at and determined that it was safe and about the fact that the petitioner was determined to be credible. What happened to him in Nogales is very distressing. And it's very clear that the cartel is pretty upset about what his brother did in helping DEA uncover the tunnel operation. And we certainly see cases involving murders of family members of cooperating informants. Is this a case where the government might be willing to meet with counsel for petitioner to discuss mediation? I have not done that in a case like this before. So I'm not sure that that's something that I could speak with the supervisor about and speak with opposing counsel about afterwards. But in a government certainly has a vested interest in encouraging informants to come forward and cooperate with them. And if one of the hesitations in doing that is fear that an informant's family members will be harmed by the cartel, I can see a pretty legitimate interest on the part of the government here and maybe seeing if something can't be worked out for this particular petitioner, given the nature of his brother's cooperation. I understand that concern, your honor. But if the Department of Homeland Security hasn't been willing to do that in the past, then I'm not sure if that's going to be an option going forward. Okay. So petitioner's counsel argues that the siblings aren't really similarly situated, because they weren't known to Pedro. Pedro knew the petitioner in Nogales had encountered him before and then had that accidental encounter on the street, which set off the series of events where he was kidnapped and beaten and all of these terrible things happened to him. How do you respond to that, that the siblings really aren't similarly situated, so you can't use the lack of harm to them as a basis to find that he has no reasonable fear of future persecution? I think that the agency was looking at the fact that petitioner was alleging that his harm was on account of family membership, being part of the Ochoa family when they made that determination in the sense that if it's just the family of Jesus that Jose is looking for, then everybody is in the same position, regardless of if the petitioner lives in Nogales or not. And I think that if you go with that line of reasoning, then relocation should not have been an issue for petitioner, because there's no evidence that Jose could find petitioner in any area outside of Nogales. Okay, so Mr. Engler, you have two minutes left if you have any more that you'd like to add to your argument. If there are no further questions, the government requests that the petition for review be denied. All right, thank you. And Mr. Green, I promised you a couple of minutes since we took you right up to the wire with our questions, so we took you to one second, so we'll give you two minutes for your rebuttal. Thank you, Your Honor. May I begin? Yes, please go ahead. So, Judge, I think that all of the conversation about particular social group is essentially legitimate academically, but as a practical issue, the IJ found that there was no PSG issue and that hasn't been briefed, but it's not part of the appeal. That being said, I would just talk about internal relocation again briefly in that I think that, again, the government's position that just relying on an indication that tragedy or harm has not befallen these other three siblings in the past is not the proper analysis, and we have to take Mr. Ochoa Ibarra as he's situated at least at the time of the merits hearing a few years ago. And at the time of the merits hearing a few years ago, the way that the cartel looked at him, the way that the cartel looked at Jesus, and the way that the cartel looked at the rest of his family, and that's the evidentiary record we have, very, very different than the way that they looked at them before then. I will note that this case went to trial just only two years after my client fled. So under the circumstances, we do believe that there's plenty of evidence in the record that it would not be safe, especially because there are a number of other individuals who, it's not just this Rodriguez it's a number of other individuals who would be interested in harming him who are still part of that cartel. As far as the reasonableness, I just wanted to say that there was no reasoned analysis pursuant to this court's opinion and saying a couple years ago, and according to the regulations, ACFR 108.13, there is evidence in the record that should have been reviewed, including the fact that my client and all of his family have essentially lived in Sonora, Mexico, and Southern Arizona for the last several decades. And the truth of the matter is, is that my client's going to be much safer, closer to the border, and quite frankly, closer to United States law enforcement that is much more likely to take an interest in protecting him than Mexican law enforcement, because of the fact that by all accounts, Jesus has continued to be an informant for DEA for a So that is something that at the very least requires a remand, at least for CAAT. All right. Thank you, Mr. Green. We will take this case under submission.
judges: Tallman, Bybee, Bade